UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SARATOGA ADVANTAGE TRUST TECHNOLOGY & COMMUNICATIONS PORTFOLIO,<br><br>Plaintiff,<br><br>v.<br><br>MARVELL TECHNOLOGY GROUP, LTD., et al.,<br><br>Defendants. | Case No. 15-cv-04881-RMW<br><br>**ORDER GRANTING MARVELL TECHNOLOGY GROUP, LTD.'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

Saratoga Advantage Trust Technology & Communications Portfolio brings this purported shareholder derivative suit against Marvell Technology Group, Ltd. and certain current and former Marvell directors and officers. Nominal defendant Marvell moves to dismiss with prejudice or, in the alternative, to stay the action pending resolution of the related cases consolidated under the case caption *Luna v. Marvell Technology Group, Ltd.*, No. 5:15-cv-05447-RMW. Dkt. No. 31. Plaintiff opposes the motion. A hearing was held on March 25, 2016. Having considered the arguments of the parties, the court grants Marvell's motion to dismiss with leave to amend. The court does not address Marvell's request for a stay at this time.

**I.    BACKGROUND**

Defendant Marvell is a publicly traded semiconductor company incorporated in Bermuda.

Compl. ¶¶ 1, 12. Marvell's operating subsidiary in the United States is based in Santa Clara, California. *Id.* ¶ 12. Plaintiff, an institutional investor based in Arizona, has held Marvell common stock since May 30, 2014. *Id.* ¶¶ 11, 53. On October 16, 2015, plaintiff filed suit in Santa Clara Superior Court against Marvell and several of Marvell's officers and directors. *See* Dkt. No. 1-1. On October 23, 2015, Marvell removed this action to federal court; plaintiff's motion to remand to state court was denied. Dkt. Nos. 1, 24. This case was deemed related to the putative securities class actions consolidated in *Luna, et al., v. Marvell Technology Group, Ltd., et al.*, No. 3:15-cv-05447. Dkt. No. 25. Marvell now moves to dismiss for lack of standing under Bermuda law and for failure to state a claim.

Plaintiff alleges that between November 20, 2014 and September 11, 2015, Marvell and the individual defendants "either made, caused to be made, and/or failed to correct statements previously made while failing to disclose material information concerning Marvell's business operations, prospects, internal controls and financial results, thus causing the Company's stock to trade at artificially inflated prices." Compl. ¶ 3. Plaintiff alleges that Marvell's stock price later dropped precipitously in response to "revelatory" disclosures by Marvell. *Id.* ¶¶ 3, 5. Plaintiff "brings this action for the benefit of Marvell to redress injuries suffered as a result of the Individual Defendants' breaches of fiduciary duties and violations of law."[1] *Id.* ¶ 51. Plaintiff asserts four causes of action against the individual defendants: breach of fiduciary duties, unjust enrichment, corporate waste, and aiding and abetting fiduciary violations. *Id.* ¶¶ 63-89.

## II.  STANDING TO BRING DERIVATIVE CLAIMS UNDER BERMUDA LAW

Marvell argues that plaintiff lacks standing to bring this action because the internal affairs doctrine requires the application of Bermuda law to plaintiff's claims, and Bermuda law does not permit shareholder derivative suits. Plaintiff argues that the "internal affairs" doctrine does not apply to derivative actions alleging securities fraud, and that, even under Bermuda law, plaintiff has properly stated a derivative claim.

---

[1] The complaint also alleges harm to "Plaintiff and other Class members." Compl. ¶ 5. In its motion to remand, however, plaintiff averred that this action "is not a class action and is not brought as such or impliedly intended to be such." Dkt. No. 13 at 6 (emphasis in original).

### A. Choice of Law

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)). "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Under this doctrine, "the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated." *Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998), *as amended* (July 15, 1998). California has codified the internal affairs doctrine: "The directors of a foreign corporation transacting intrastate business are liable to the corporation, its shareholders, creditors, receiver, liquidator or trustee in bankruptcy for the making of unauthorized dividends, purchase of shares or distribution of assets or false certificates, reports or public notices or other violation of official duty according to any applicable laws of the state or place of incorporation or organization, whether committed or done in this state or elsewhere." Cal. Corp. Code § 2116.

Plaintiff challenges the application of the internal affairs doctrine in this case, arguing that "California courts often—but not always—look to the 'internal affairs' doctrine" to determine choice of law in a shareholder derivative action. Dkt No. 38 at 3. Plaintiff claims that California courts "clearly hold" that "the 'internal affairs doctrine' has no place where—as in this instance—a shareholder derivative claim is premised factually on violations of securities law." *Id.* at 2. Plaintiff does not, however, assert any securities law cause of action—federal or state—in the complaint. While plaintiff's allegations in this case rely on the same Marvell SEC disclosures that are the subject of a related securities class action, plaintiff represented at the hearing that plaintiff does not proceed on a securities fraud theory in this action. *See also* Dkt. No. 21, Pl's Opp'n to

3

15-cv-04881-RMW
ORDER GRANTING MARVELL TECHNOLOGY GROUP, LTD.'S MOTION TO DISMISS
FC

Mot. to Consider Whether Cases Should be Related, at 1-2 (describing case as a "derivative action brought exclusively under California State law being pursued by an individual shareholder for breaches of duty").

The cases cited by plaintiff do not support plaintiff's position that the internal affairs doctrine is inapplicable to shareholder derivate claims for breach of duty that happen to relate to securities fraud claims brought by other plaintiffs. In *Friese*, the California Court of Appeal declined to apply the internal affairs doctrine, but distinguished the California securities claims at issue from shareholders' claims to enforce their own rights: "[W]e do not accept defendants' characterization of section 25502.5 as merely a device for enforcing directors' and officers' fiduciary duties to shareholders." *Friese v. Superior Court*, 134 Cal. App. 4th 693, 709-710 (2005), *as modified on denial of reh'g* (Dec. 29, 2005), *as modified* (Jan. 24, 2006) (noting that California's securities regulations serve "broad public interests rather than the more narrow interests of a corporation's shareholders"). In *Vaughn*, the California Court of Appeal distinguished *Friese* as applying to securities claims and proceeded to apply the internal affairs to shareholder derivative claims for breach of fiduciary duty where, as here, the "complaint parallel[ed] the allegations in several federal securities fraud class actions" that were filed around the same time. *Vaughn v. LJ Int'l, Inc.*, 174 Cal. App. 4th 213, 223-25 and 218 n.5 (2009); *see also Voss v. Sutardja*, No. 14-CV-01581-LHK, 2015 WL 349444, at *7-8 (N.D. Cal. Jan. 26, 2015) (citing *Vaughn* and applying internal affairs doctrine to shareholder claims of breach of duty and unjust enrichment by corporate officers).

Plaintiff cites several other cases holding that the internal affairs doctrine does not apply to claims for securities violations. *See Williams v. Gaylord*, 186 U.S. 157, 165 (1902) ("[W]hen a corporation sells or encumbers its property, incurs debts or gives securities, it does business, and a statute regulating such transactions does not regulate the internal affairs of the corporation."); *W. Air Lines, Inc. v. Sobieski*, 191 Cal. App. 2d 399, 410 (1961) ("ordinarily speaking the issuance of capital stock or the stock structure of a corporation is an internal affair, yet the issuance and sale of stock within a state other than that of its organization may be regulated in order to protect the

4

residents and citizens of the former state"); *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 447, 8 Cal. Rptr. 3d 56, 68 (2003) (noting that internal affairs doctrine governs choice of law for claims involving "the relationships among the corporation, its directors, officers and shareholders," as distinct from claims arising out of the "sale or disposition or transfer of the shares of stock" and other types of corporate transactions) (citations omitted). But none of these cases suggests that there is an exception to the internal affairs doctrine for state law claims against corporate officers for breach of duty where such claims parallel securities fraud allegations made in another case.

At the hearing, plaintiff also cited *Wilson v. Louisiana-Pac. Res., Inc.*, 138 Cal. App. 3d 216, 224 (1982) and *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157 (1978) *holding modified by I. J. Weinrot & Son, Inc. v. Jackson*, 40 Cal. 3d 327 (1985). Neither case is availing. In *Wilson*, the Court of Appeal considered the constitutionality of California Corporations Code section 2115—a statutory exception to the internal affairs doctrine for "pseudo-foreign" corporations, more than half of whose outstanding voting securities are held by California residents.[2] The *Wilson* court found that the internal affairs doctrine was not relevant to the question of section 2115's constitutionality: "This is not a common choice-of-law question; the Legislature has resolved the conflicts issue by mandating application of this state's law under certain conditions. The question is whether that mandate is constitutional." 138 Cal. App. 3d at 224. The *Wilson* court noted that the internal affairs doctrine "has never been followed blindly in California," 138 Cal. App. 3d at 224, but the court did not discuss any exception to the doctrine that would apply to plaintiff's claims in this case. *See also State Farm*, 114 Cal. App. 4th at 447 (noting that the *Wilson* court criticized the internal affairs doctrine "in a single sentence of dictum," but that "in the 20 years since *Wilson* was decided, the internal affairs doctrine has

---

[2] Plaintiff does not allege in the complaint or its opposition that section 2115 applies to Marvell, but plaintiff seemed to suggest at the hearing that it might. The court notes that section 2115 does not apply to corporations "with outstanding securities listed on the New York Stock Exchange, the NYSE Amex, the NASDAQ Global Market, or the NASDAQ Capital Market." *See* Cal. Corp. Code § 2115 (c).

received broad acceptance by the courts"). *Offshore Rental* is wholly in apposite. The California Supreme Court considered a conflict of law problem in the context of a negligence action; both plaintiff and defendant happened to be corporations, but the internal affairs of a corporation were not implicated in any way. *See* 22 Cal. 3d at 160.

### B.  Exceptions to *Foss* Rule

The parties agree that Bermuda follows the general rule from *Foss v. Harbottle,* 67 Eng. Rep. 189 (Ch. 1843). "Under the rule in *Foss*, 'the proper plaintiff in a suit addressing a wrong done to a company is the company itself, not the shareholder.'" *Voss*, 2015 WL 349444, at *10 (quoting *Erie Cnty. Emps. Ret. Sys. v. Isenberg,* No. CIV.A. H–11–40522012 WL 3100463, at *3 (S.D. Tex. July 30, 2012)). The parties also agree that "the rule in *Foss* 'is subject to four 'exceptions' which permit a shareholder to bring suit when the conduct at issue is: (1) *ultra vires*; (2) requires a special majority to ratify; (3) infringes a shareholder's personal rights; or (4) qualifies as a 'fraud on the minority.'" *Voss*, 2015 WL 349444, at *10 (quoting *In re Tyco Int'l, Ltd.*, 340 F.Supp.2d 94, 98 (D.N.H. 2004)).

Plaintiff argues that three exceptions to the *Foss* rule apply in this case. Specifically, plaintiff argues that individual defendants' conduct amounts to fraud on the minority, was ultra vires, and violated shareholders' personal rights. *See* Dkt. No. 38 at 6-8. Plaintiff bears the burden of establishing a prima facie case that an exception applies. *See City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009) ("plaintiff, before proceeding with a derivative suit, must 'establish a prima facie case . . . that the action falls within the proper boundaries of the exception to the rule in *Foss v. Harbottle*") (quoting *Prudential Assurance Co. Ltd. v. Newman Indus. Ltd. (No. 2),* [1982] Ch. 204, 221-22 (C.A.)). Plaintiff has not established a prima facie case for any of the *Foss* exceptions and therefore fails to state a claim.

#### 1.  Fraud on the Minority Exception

The fraud on the minority exception requires two elements: (1) the alleged wrongdoers must have "control" over a majority of the stock with voting rights, and (2) the wrongdoers must have committed "fraud." *See Tyco*, 340 F. Supp. 2d at 98. "[T]he concept of control 'embraces a

broad spectrum extending from an overall absolute majority of votes at one end, to a majority of votes at the other end made up of those likely to be cast ... as a result of influence or apathy.'" *Id.* at 99 (quoting *Prudential,* [1982] Ch. 204, at 219). "Fraud" does not "require proof of fraud as an American court would understand the term. Instead, English courts speak of fraud in this context in a broader equitable sense in which control is misused to benefit the wrongdoers at the company's expense." *Id.* at 99 (citing *Konamaneni v. Rolls Royce (India) Ltd.,* [2002] 1 W.L.R. 1269, at 1278 (Eng. Ch. 2001); *Estmanco (Kilner House) Ltd. v. Greater London Council,* [1982] 1 All E.R. 437 (Ch. 1982)). Because plaintiff does not sufficiently allege "fraud" by the individual defendants, the court need not reach the question of whether plaintiff's allegations of misconduct by the entire board are sufficient to establish "control."

Plaintiff argues that the elements are met by its allegations that "Marvell's entire board of directors engaged in accounting fraud and personally benefited from that fraud by artificially inflating Marvell's stock price, thus fraudulently increasing their personal compensation to the company's detriment." Dkt. No. 38 at 7 (emphases omitted). To establish the "fraud" element of the exception, plaintiff relies on its allegations that the individual defendants received "compensation and benefits . . . based, at least in part, on Marvell's artificially inflated stock price and inflated revenues." Compl. ¶ 49(b). These allegations are insufficient to show misuse of control for personal benefit by the individual defendants. *See Tyco*, 340 F. Supp. 2d at 100 ("It is difficult to see how the receipt of stock options can constitute improper self-dealing, at least in a case such as this where the plaintiff does not allege either that the options were unearned or that the directors stood to gain in some special way from increases in the company's stock price at the expense of other shareholders."); *see also Winn v. Schafer*, 499 F. Supp. 2d 390, 398 (S.D.N.Y. 2007) (finding that plaintiff failed to allege "conduct sufficient to establish the requisite self-dealing in order to invoke the fraud on the minority exception" because plaintiff did not allege "additional benefits that inured to the Individual Defendants 'beyond the normal emoluments of office'") (quoting *Tyco*, 340 F. Supp. 2d at 100 n. 7).

### 2. Ultra Vires Exception

Plaintiff argues that the ultra vires exception applies because Marvell's "shareholders could no more have approved the alleged securities violations in this case than they could have approved the use of Marvell's assets to engage in felony theft." Dkt. No. 38 at 6 (citing Bermuda Companies Act of 1981, Part II § 11(b) ("Subject to any provision of law, . . . a company has the capacity, rights, powers and privileges of a natural person.")). The court finds it unlikely that making statements about the financial condition of the company constitutes ultra vires conduct under Bermuda law, even if such statements constitute a violation of securities law. *See Harper Woods*, 589 F.3d at 1303 (D.C. Cir. 2009) ("Whether conduct is *ultra vires* thus depends upon whether a company is *capable* of performing the act, as set forth in the company's memorandum of association.") (emphasis in original) (citing *Rolled Steel Products (Holdings) Ltd v British Steel Corp.*, [1986] Ch 246, at 295 (U.K.)). In any case, "when a shareholder seeks to bring a derivative action to recover damages for past *ultra vires* acts, the shareholder must demonstrate that the case qualifies under the fraud on the minority exception." *Tyco*, 340 F. Supp. 2d at 101-02 (citing *Clark v Energia Global Ltd* [2002] Bermuda LR 39 at 10-1). Plaintiff's claims are based on past statements, *see* Compl. ¶ 3, and plaintiff has not alleged facts to show that the case qualifies under the fraud on the minority exception. Therefore, plaintiff may not rely on the ultra vires exception.

### 3. Personal Rights Exception

Plaintiff also asserts that "Plaintiff's and Marvell's other shareholders' rights have been violated in this case as a result of violation of the well-established right to purchase and sell Marvell stock free from manipulation," citing two securities fraud class actions. Dkt. No. 38 at 7-8. However, plaintiff brings only derivative claims on behalf of Marvell. *See* Compl. ¶ 51 ("Plaintiff brings this action for the benefit of Marvell . . ."). Therefore, plaintiff's personal rights as a shareholder are not implicated. *See Tyco*, 340 F. Supp. 2d at 98 (noting that it has been suggested that "personal rights" maybe not be a true exception "because a shareholder's suit to protect her personal rights is not brought as a derivative action") (citing treatises on English law).

### III. LEAVE TO AMEND

Marvell seeks dismissal with prejudice, arguing that amendment would be futile. Plaintiff argues that even if its claims are dismissed, it should be granted leave to amend to "add numerous additional facts further demonstrating the exceptions to the *Foss* rule." Dkt. No. 38 at 9. Because "plaintiff could conceivably allege additional facts plausibly establishing that their derivative claims satisfy one of the exceptions to the rule in *Foss*," the court permits plaintiff leave to amend. *Voss*, 2015 WL 349444.

As an alternative basis for dismissal, Marvell further argues that an exculpatory provision in its charter precludes any cause of action that is not based on "fraud or dishonesty," and that plaintiff fails to state any claim for "fraud or dishonesty" with the particularity required by Federal Rule of Civil Procedure 9(b). In its opposition brief, plaintiff argued that the allegations in the complaint were sufficient to allege fraud. *See* Dkt. No. 38 at 8-9. At the hearing, however, plaintiff indicated that plaintiff is not proceeding on a fraud theory of liability. It is not clear to the court what factual basis other than fraud would support plaintiff's claims for breach of fiduciary duty, unjust enrichment, and corporate waste—especially in light of plaintiff's argument that the internal affairs doctrine should not apply where, "as here," a shareholder derivative claim "is tethered to a foreign defendant's fraudulent violations of U.S. Securities law." Dkt. No. 38 at 5. Any amended complaint must include sufficient factual allegations for the court to understand the theory on which plaintiff proceeds.

### IV. CONCLUSION

For the foregoing reasons, the court grants Marvell's motion to dismiss with leave to amend. Should plaintiff chose to file an amended complaint, plaintiff must do so within thirty (30) days. Failure to amend within thirty (30) days will result in dismissal with prejudice. Having dismissed plaintiff's claims, the court denies Marvell's motion for a stay without prejudice.

**IT IS SO ORDERED.**

Dated: August 16, 2016

_____
Ronald M. Whyte
United States District Judge